# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

JOHN MICHAEL RICKHER, individually )
and on behalf of a class of        )
similarly situated persons,        )
                                   )
        Plaintiff,                 )
                                   )
        v.                         )    No. 05 C 2152
                                   )
THE HOME DEPOT, INC., a Delaware   )
corporation,                       )
                                   )
        Defendant.                 )

## MEMORANDUM OPINION

Plaintiff John Michael Rickher brought this suit alleging that defendant, The Home Depot, Inc. ("Home Depot") violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, and the Illinois Uniform Commercial Code, 810 ILCS 5/2A-108. Plaintiff alleges that when customers rent tools and other equipment from Home Depot stores, they are presented with a Rental Agreement that by default includes an assessment for a "damage waiver" of 10 percent of the rental cost, without being informed that the damage waiver is optional and without being asked whether they would like to purchase the waiver. Plaintiff seeks to represent a class of persons who rented tools or equipment from a Home Depot store in Illinois within three years of the date the complaint was filed.

This action was originally brought in the Circuit Court of Cook County. Home Depot removed the action to this court, asserting class-action diversity jurisdiction under 28 U.S.C. § 1332(d). Section 1332(d)(2)(A) provides that "district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which" any member of a class of plaintiffs is a citizen of a state different from any defendant.

From a review of defendant's Notice of Removal and plaintiff's Class Action Complaint, it appeared to the court that the diversity-of-citizenship requirement is satisfied but that the amount in controversy is questionable. Therefore, on December 14, 2005, we issued a minute order requesting the parties to brief the issue of whether the amount-in-controversy requirement is satisfied.

Home Depot concedes that it bears the burden of showing a reasonable probability that the stakes exceed the $5 million jurisdictional minimum, see Brill v. Countrywide Home Loans, Inc., 427 F.3d 446, 449 (7th Cir. 2005).[1] We read the complaint as a whole to determine the amount in controversy. See RTC Commercial

---

[1] Home Depot makes much of the principle that once the proponent of jurisdiction meets this burden, only a "legal certainty" that the judgment will be less forecloses federal jurisdiction. See Brill, 427 F.3d at 448. We do not reach the "legal certainty" issue, however, because Home Depot fails to meet its initial burden, see discussion infra.

Assets Trust 1995-NP3-1 v. Phoenix Bond & Indem. Co., 169 F.3d 448, 452 (7th Cir. 1999). Part of the removing party's burden is to show not only what the stakes of the litigation could be, but also what they are "<u>given the plaintiff's actual demands</u>. . . . The demonstration concerns <u>what the plaintiff is claiming</u> (and thus the amount in controversy between the parties), not whether plaintiff is likely to win or be awarded everything he seeks."  Brill, 427 F.3d at 449 (emphasis added).

Accordingly, we begin with an examination of what the plaintiff is actually claiming and seeking in the complaint.  The relevant portions of the complaint are as follows:

> Plaintiff John Michael Rickher . . . states for his complaint as follows:
>
> **Nature of the Case**
>
> 1.  When customers rent tools and other equipment from Home Depot, they are automatically assessed a "Damage Waiver" charge of 10% of the rental price.  This "Damage Waiver" purportedly relieves the customer of liability for accidental damage to the rented tool.  Although the Damage Waiver is optional, Home Depot automatically includes this charge in every Rental Agreement, without first asking customers whether they want to purchase this "protection," and without disclosing that the charge is optional.  This is what is known as a negative option; selling something to customers unless they ask not to purchase it.  It is a deceptive practice and it should be stopped and redressed.
> . . .
>
> **The Facts**
>
> 6.  Mr. Rickher rented tools on multiple occasions from [certain Illinois] Home Depot stores . . . .  Each time he did so, Home Depot's Rental Agreement included a

charge for a "Damage Waiver."  The charge is uniformly 10% of the total rental charge, exclusive of sales tax. Copies of some of these Rental Agreements are attached as Exhibit A.

    7.    The "Damage Waiver" purports to "relieve [the customer] of liability for accidental damage to [the rented equipment], but **not** for any losses or damages due to theft, burglary, misuse or abuse, theft by conversion, intentional damage, disappearance or any loss due to [the customer's] failure to care properly for such Equipment in a prudent manner (including without limitation by using proper fuel, oil and lubricants and not exceeding such Equipment's rated capacity, if applicable)." . . .

    8.    In each of the transactions reflected in the Exhibit A Rental Agreements, a Damage Waiver charge was automatically included in the rental charges.

    9.    In each of the transactions . . . , Home Depot never disclosed that the Damage Waiver was optional.

    10.    Mr. Rickher paid the Damage Waiver for each of the transactions . . . .

    11.    Mr. Rickher would not have paid the Damage Waiver charge . . . had he been informed that it was optional.

    12.    The Damage Waiver is of little if any value because:
    a.  The coverage is limited to "accidental" damage to the rented equipment, but excludes, among others, losses due to theft or the customer's failure to properly care for the equipment.  The Damage Waiver's coverage is therefore limited to some slim theoretical category of cases where equipment suffers "accidental" damage that is not due to any "mishandling" by the customer.
    b.  The coverage is automatically included in the rental of all tools, including some that are extremely unlikely to suffer damage.  Mr. Rickher, for example, paid a Damage Waiver for the rental of a bolt cutter.
    c.  Some or all of the protection allegedly provided by the Damage Waiver is covered by a typical homeowner's insurance.

13. The charge for the Damage Waiver--10% of the rental price--is exorbitant given the limited or non-existent coverage it provides.

. . .

### Class Action Allegations

15. Plaintiff brings this action on behalf of all those who rented tools or equipment from a Home Depot store located in Illinois, within 3 years of the date of the filing of this action, who paid Damage Waiver charges (the "Class").

. . .

17. Common questions of law and/or fact for the Class predominate over questions affecting individual members of that class. Common questions include, but are not limited to:

   a. Whether Home Depot has a policy of automatically including Damage Waiver charges in all Rental Agreements without first asking customers if they wish to purchase that protection.

   b. Whether Home Depot has a policy of automatically including Damage Wavier [sic] charges in all Rental Agreements without disclosing that the charge is optional.

   c. Whether Home Depot's policy of automatically including Damage Waiver charges in all Rental Agreements without asking customers if they wish to purchase that protection is a deceptive practice that violates the Illinois Consumer Fraud and Deceptive Business Practices Act.

   d. Whether Home Depot's policy of automatically including Damage Wavier [sic] charges in all Rental Agreements without disclosing that the charge is optional is a deceptive practice that violates the Illinois Consumer Fraud and Deceptive Business Practices Act.

   e. Whether Home Depot's policy of automatically including Damage Waiver charges in all Rental Agreements without asking customers if they wish to purchase that protection, and without disclosing that the charge is optional, is unconscionable under 810 ILCS 5/2A-108.

. . .

**Count I [Illinois Consumer Fraud and
Deceptive Business Practices Act]**

. . .

21. Defendant's conduct is unfair and/or deceptive in violation of 815 ILCS 505/2.

22. Defendant's conduct has caused harm to plaintiff and the other Class members. Plaintiff and other Class members paid Damage Waiver charges they would not have paid had those charges not been automatically included in all Rental Invoices, and plaintiff and other Class members paid Damage Waiver charges they would not have paid had Home Depot disclosed that the charge was optional.

**Count II [Violation of Illinois
Uniform Commercial Code]**

. . .

24. Defendant's policies with respect to inducing payment for the Damage Waiver are unconscionable.

25. Defendant's conduct violates the Illinois Uniform Commercial Code, 810 ILCS 5/2A-108.

WHEREFORE, plaintiff prays for relief under Counts I and II as hereinafter set forth:

A. That the Court certify this case as a class action . . . .

B. That plaintiff and the Class be awarded actual damages in an amount to be determined at trial.

C. That defendant be enjoined from continuing its unlawful practices.

D. That plaintiff and the Class be awarded the costs incurred in bringing this action together with reasonable attorneys' fees and expenses, including expert fees and prejudgment interest.

E. That the court award such other relief as the Court deems just and proper.

(Class Action Complaint.)

Home Depot presents three main arguments in its brief, the first of which concerns the "actual damages" sought by plaintiff. This argument has two components: (1) Home Depot's revenue from damage waivers; and (2) unconscionability. As for damages, plaintiff alleges that he and the potential class members were injured by paying damage waiver charges that they would not have paid had the charges not been "automatically included" in the rental charges and had the optional nature of the charges been disclosed. Attached to Home Depot's brief is the Declaration of Dan McAreavey, Home Depot's Director of Tool Rental Operations and Merchandising, who states that the amount of Home Depot's revenue from damage waivers alone (not from the entire tool rental agreements) from March 2002 to the present totaled $3.82 million. That leaves an additional $1.18 million that Home Depot must demonstrate is at stake; this is where Home Depot strains to read allegations into the complaint that are simply not there.

Home Depot contends that plaintiff's "claim of unconscionability impacts Home Depot's entire tool rental program." (Brief in Support of Federal Jurisdiction at 5.) According to Home Depot, plaintiff "challenges . . . the entire tool rental transaction . . . apparently because the damage waiver is allegedly 'valueless.'" (Id.) This is not a fair interpretation of the complaint. The complaint consistently targets the alleged practice of charging for damage waivers <u>without informing customers that</u>

<u>they are optional</u>, not the broader practice of offering and charging for damage waivers. The complaint does characterize the waivers as having "little if any value," but this allegation is obviously included to bolster the allegation that customers would not pay for the waiver if they were informed about it, knew of its optional nature, and knew of its limited coverage. Contrary to Home Depot's contention, the unconscionability complained of is not that the waivers are valueless, and relief is not sought on that basis. Rather, it is alleged that Home Depot's "policies <u>with respect to inducing payment</u> for the Damage Waivers are unconscionable." (Class Action Complaint, ¶ 24 (emphasis added); <u>see also</u> ¶ 17(e) (framing the unconscionability issue as "[w]hether Home Depot's policy of automatically including Damage Waiver charges in all Rental Agreements without asking customers if they wish to purchase that protection, and without disclosing that the charge is optional, is unconscionable under 810 ILCS 5/2A-108").)

Home Depot attempts to fit plaintiff's claim within 810 ILCS 5/2A-108(1), which provides that "[i]f the court as a matter of law finds a lease contract or any clause of a lease contract to have been unconscionable at the time it was made, the court may refuse to enforce the lease contract . . . ." Home Depot maintains that "one remedy that Plaintiff and putative class members may demand, and a judgment they might receive under Section 5/2A-108, is rescission of the entire tool rental agreement." (Brief in Support

of Federal Jurisdiction at 5.) This argument ignores what plaintiff is actually claiming: that the damage waiver, just a part of the rental agreement, was induced by unconscionable conduct. This allegation falls within 810 ILCS 5/2A-108(2), which provides that the court "may grant appropriate relief" if it finds that any clause of a lease contract has been induced by unconscionable conduct. Recission of, or a refusal to enforce, the entire tool rental agreement would not be "appropriate relief" for the complained-of conduct. Moreover, plaintiff does not seek this type of equitable relief in the complaint. The only equitable relief sought is injunctive, which leads us to Home Depot's second main argument.

In Home Depot's view, its costs of compliance with an injunction boost the action over the jurisdictional minimum. "In a suit for injunctive relief, 'the amount in controversy is measured by the value of the object of the litigation.' And, at least in this circuit, the object may be valued from either perspective--what the plaintiff stands to gain, or what it would cost the defendant to meet the plaintiff's demand." Macken v. Jensen, 333 F.3d 797, 799-800 (7th Cir. 2003) (citation omitted).

The complaint vaguely asks that Home Depot "be enjoined from continuing its unlawful practices." (Class Action Complaint, Prayer for Relief.) Home Depot asserts that "Plaintiff's injunctive relief could include an injunction prohibiting Home

Depot from future sales of damage waivers for tool rentals" and that it would lose over $1.2 million per year if enjoined from selling damage waivers. (Brief in Support of Federal Jurisdiction at 6.) As explained supra, this is unavailing because the "unlawful practices" that are alleged in the complaint do not include the general practice of selling damage waivers, and thus the complaint cannot be read as seeking an broad injunction against the future sales of damage waivers. The relevant inquiry is what Home Depot would lose by being enjoined from selling damage waivers without informing customers that the damage waiver is optional and without asking customers if they wish to purchase the damage waiver. The only evidence Home Depot offers is in regard to revenue from damage waivers, period. It fails to present any evidence of the cost of complying with an injunction to inform consumers of the optional nature of the waivers. In any event, it is hard to imagine that those costs would approach, let alone exceed, $1.18 million.

Home Depot's third argument is that plaintiff's attorney's fees may also be considered in determining the amount in controversy. At least one of the statutes under which plaintiff seeks relief--810 ILCS 5/2A-108--provides a basis for an award of attorney's fees. Home Depot, however, presents no evidence attempting to quantify these fees (or, for that matter, any "other relief" that might be appropriate as contained in the prayer for

relief), or an analysis with any substance,[2] and, like the cost of complying with injunctive relief, it is highly doubtful that such fees would even approach $1.18 million.

Because Home Depot has failed to show a reasonable probability that the amount in controversy in this litigation exceeds $5 million, federal jurisdiction is lacking, and the action will be remanded to state court.

## **CONCLUSION**

The court sua sponte orders this action to be remanded to the Circuit Court of Cook County. The Clerk of the Court is directed to mail a certified copy of the remand order forthwith.

DATE:     January 26, 2006

ENTER:  _____
            John F. Grady, United States District Judge

---

[2] The complaint in Schimmer v. Jaguar Cars, Inc., 384 F.3d 402, 405 n.1 (7th Cir. 2004), "demanded attorneys' fees, incidental and consequential damages, and any further relief that the court found necessary." The Seventh Circuit stated that because the defendant, "carrying the burden of proof as the removing party, presented no evidence attempting to quantify these damages, nor even pressed that these damages should be included in the amount in controversy, we need not consider them." Id. (emphasis added).